THOMAS HAMILTON, plaintiff in error, vs. BENNETT H. CON-YERS, defendant in error.

[1.] Upon a motion for a new trial, it is a sufficient compliance with the rule of Court requiring a brief of the testimony to be filed under the approval of the Court, if the same has been substantially agreed upon by the counsel.

[2.] If counsel have leave of absence, it dispenses with the discharge of any and every professional duty imposed upon them by the business of the Court at that Term.

[3.] A motion for new trial may be amended, so as to perfect a brief of the testimony began, but not formally finished, at the time the application was filed; the counsel for movant agreeing to adopt the written statement of the evidence taken down at the time, by the opposite counsel.

The motion for a new trial is amendable.—BENNING J.

Motion for new trial, from Cass county. Decided by Judge TRIPPE, September Term, 1857.

The facts of this case are fully stated in the opinion of the Court.

WRIGHT & UNDERWOOD, for plaintiff in error.

AKIN; CHISOLM & WADDELL; and MILNER, *contra*.

The Court not being unanimous, the Judges delivered their opinions *seriatim*.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This case was tried March, 1857. The verdict was for Conyers. Hamilton, by his counsel, applied for a new trial. At first, it was the intention of the parties, to have the motion decided at once, with a view to bring the case before this Court, which sat the week ensuing. Accordingly, the counsel went to work to make out and agree upon a brief of the testimony. And this was done, with the exception of the evidence of Dr. Young, which was drawn up and presented by counsel for Conyers, but objected to by the attorneys of Hamilton. The testimony of Tumlin was not written out; but

there was no difficulty made, at the time or since, as to that. At this stage of the case, the Court announced that an adjourned Term would be held in June, at which time, it was the intention of Hamilton's counsel to complete the brief of the evidence, and argue the motion.

Upon application to the presiding Judge of the Circuit, leave of absence from the adjourned Term of the Court, was granted in writing to Messrs. Underwood and Wright, who alone had control and management of the cause, and who, but for that fact, would have finished and filed an abstract of the proof, at the first Term of the Court when the judgment was rendered.

When the motion for the new trial was called up at the next regular Term in September, counsel for Hamilton moved to complete the brief and proceed with the motion, proposing to adopt the statement of Dr. Young's testimony, prepared in March by defendant's counsel, and add the testimony of Tumlin, about which there was no dispute or difficulty.

The Court refused to allow the amendment to be made, and on motion of defendant's counsel, dismissed the rule.

Was this decision right?

We think not, for three reasons.

[1.] The testimony was, *in substance*, agreed upon at the Term at which the motion was made. Dr. Young's evidence was all about which counsel differed. That was drawn up by counsel for Conyers; and although objected to at the time, was offered to be adopted at the September Term, as the evidence in the case. Were not all the objects of the rule of Court fulfilled? We take it, that the rule only requires so much of the testimony to be agreed upon or approved, as is material to a proper hearing of the motion. All else is unnecessary. Young's testimony and Tumlin's was all that was left out; Tumlin's was immaterial, and counsel for the motion agreed to take Young's testimony, as taken down in writing by their adversary at the first Term.

We need not be reminded of the importance of agreeing

Hamilton vs. Conyers.

upon the testimony at the Term when the case is tried; and while it is fresh in the recollection of the parties, and of the Court; and while the same Judge is presiding who tried the cause. For myself, I acknowledge fully all that; I insist however, that in this instance, this was substantially done, and Courts at this day look to substance and not to shadows, in the administration of justice.

[2.] In the second place, counsel who conducted this cause, were absent from the adjourned Term of the Court in June, by the written permission of the Judge. As to the propriety of granting such indulgence, without the consent of the opposite side, I have nothing to say, except to doubt the policy, not to say the power, in the party to grant such permission, except upon a showing in advance which would justify a continuance of the cases in which such counsel are employed when the Term arrives; for instance, on account of ill health, or to accompany a sick wife or child to be cured of disease. But I know this practice has prevailed extensively, if not generally, over the State, and I forbear to express any opinion respecting it. The leave was granted, and as to the extent of the indulgence, we take it, that it extended to every professional duty which the business of the Court imposed upon the counsel. Not to allow the indulgence, whether rightfully granted or not, to operate in this case, would work a surprise and injustice to the client.

[3.] In the last place, we hold that, according to the decision of this Court in *Snellings, administrator, vs. Darrell,* 17 *Ga. Rep.* 141, the party had the right to amend his motion for a new trial, by completing the brief. If an additional ground may be inserted in the motion at the hearing, and not taken at the time the application for the new trial was made, we can see no good reason why the brief of the testimony may not be completed.

It is suggested that the case in 17*th Georgia* is overruled by *Powell vs. Howell,* 21 *Ga. Rep.* 214. There is some mistake as to this latter case. This was an application for a

new trial, made at the November Term, 1855, of Chattahoochee Superior Court. At the May Term following, a motion was made to dismiss the rule for want of service thereof, and because no brief of the evidence was filed at the Term of the Court at which the rule was granted, and no approval of such brief by the Court, and entry thereof on the minutes. The Court ordered the same to be entered on the minutes of the Court, *nunc pro tunc*, and plaintiff's counsel excepted. The defendant further moved to amend his *rule nisi*, which the the Court allowed, and counsel for plaintiff excepted.

Judge McDonald, in delivering the opinion of the Court, thus states the case: "Although the record presents many assignments of error, in the decisions and judgments of the Court below, it will be necessary to consider those alone which are founded on the refusal of the Court to dismiss the *rule nisi* for a new trial, *and as connected with it*, the Court's decision allowing other grounds to be added to the rule, at the Term of the Court at which it was heard."

Now, it is obvious, that while the point of, whether or not a new ground can be added to a rule for a new trial, at the hearing was in this case, it not only had no connection with the other ground, but was not necessary at all to its decision. The first and main ground was to dismiss the rule for want of service, &c. Reversing the Court below, as we did; upon this ground, it was a final termination of the case, and it was unnecessary to discuss or decide the other ground. That the other was considered in the argument, and in our conference, I will not undertake to say; my memory is too fallible. All I can say is, that I have no recollection about it. The question was directly made; indeed, it was the only point in the case of *Snellings, in* 17*th Georgia,* argued by eminent counsel, maturely considered and deliberately decided, that a motion for a new trial may be amended, so as to include an additional ground, not taken at the time the application was filed; and I can affirm with confidence, that I have never since

consented understandingly to any reversal or modification of that opinion. I believed it right at the time; I have never doubted it since.

And for these reasons we reverse the judgment of the Court below, refusing to entertain the motion for a new trial, and allowing it to be amended, if, indeed, it required amendment.

To say nothing of the English statutes of Jeofails, which are exceedingly broad, had the 9th section of the Judiciary Act of 1799, *(Cobb,* 486,*)* been construed in the spirit of its authors, what a world of trouble, delay, expense and injustice would have been saved to suitors and the country. It declares that " no petition, answer, return, process, judgment or *other proceeding in any civil cause,* shall be abated, arrested, quashed or reversed, for any defect in matter of form, or for any clerical mistake or omission, not affecting the real merits of the cause; but the Court, on motion, shall cause the same to be amended, *without any additional cost, at the first term, and shall give judgment according to the right of the cause and matter of law,* as it shall appear to the said Court, *without regard to such imperfections in matter of form, clerical mistake or omission."*

This noble Act was soon whittled away by judicial interpretation, until it became entirely nugatory. I am fully warranted in this assertion by the preamble to the Act of 1818, *Cobb,* 487. It recites, that " whereas the said Judiciary Act was intended for the purpose of bringing parties litigant to a speedy judicial decision, without delay, and with as little cost as practicable, and it was thereby intended that the small omissions of *parties,* clerks or sheriffs, not affecting the real merits of the cause, should in all cases, (substantially set out,) be amended on motion, without delay or costs; *and it having grown into practice in said Courts, to give or grant a term, and sometimes nonsuit, for the smallest omissions of the officers of the said Courts, and as a further increase of the said practice may lead us back to all that tedious and expensive la-*

byrinth *of special pleadings*, which the said *Judiciary Act* intended to avoid, &c.

"*Be it enacted*, That in every case where there is a good and legal cause of action plainly and distinctly set forth in the petition, and there is, in substance, a copy served on the defendant or defendants, or left at their most notorious place of abode, *any other objection shall* be, on motion, amended without delay or additional costs." And further, it is provided, that "no nonsuit shall be awarded when the cause of action shall be substantially set forth in the declaration, for any formal variance between the allegation and proof."

It would seem that after this, parties would have had a sufficient guaranty that their cases would be tried promptly, upon their merits; that truth had triumphed over technicality. How vain the hope! The warfare was renewed, and the contest between the Courts and the Legislature continued down to 1853—1854, when the General Assembly resolved to put an end to this struggle by depriving the Courts of all power over this subject; to make amendments a matter of *right* in the *parties*, and not of *discretion* in the *Courts*. The Act of that session provides, *(Pamphlet p.* 48,) that "parties plaintiffs and defendants in the Superior, Inferior and Corporation Courts of this State, whether at law or in equity, may at *any* stage of the cause, as *matter of right*, amend their pleadings, *in all respects*, whether in matter of form or substance only, but in case the party applying for leave to amend pleadings or to show a default, shall have been guilty of negligence in respect to the matter of amendment or default, the Court may compel him to pay his adversary the costs of the proceeding for which he moves, and may enforce other reasonable and equitable terms on him at discretion, not touching the real merits of the cause in controversy."

The right to amend, therefore, is no longer a debatable question. The only discretion left to the Courts is, the price the party shall pay for this privilege given to him by the law. And in addition to the general limitation, implied in all such

Hamilton vs. Conyers.

cases, upon the discretion of the Court, namely : that it must not be grossly abused, there is the further special limitation, that terms can only be imposed where the party is guilty of negligence ; and further, the terms must not be such as to affect " the real merits of the cause in controversy."

Now in view of all this legislation, this Court was called on for the first time in the case of *Snellings vs. Darrell.* We ascertained that *pleadings* which this Act authorizes to be amended, has a restricted as well as a general meaning; the former beginning with the declaration, and terminating with the issue of fact, or of law, or both ; the other including bills of exceptions, writs of error, motions for new trials, and every thing which transpires during the progress of the cause, from its inception to its consummation. The question was, in which sense did the Legislature intend to use the term in the statute ? With the noon-tide blaze of light beaming upon us from the legislative history of amendments in this State, could any Court hesitate to conclude that the term "pleading" was designed to be used in its broad sense? We think not. If a defendant may amend his *affidavit* of illegality, either by the insertion of new grounds, or the correction of errors and mistakes in the original affidavit, as he may do, *(Cobb*, 518,*)* surely he may amend a motion for a new trial. The Act of 1850, allowing affidavits of illegality to be amended, I look upon as a legislative declaration, *in advance*, as to the proper construction of the Act of 1853–54, so far as it relates to new trials.

Judgment reversed

BENNING J. concuring.

I think the judgment of the Court ' below, erroneous. I think it, in conflict with *Snelling vs. Darrell* 17 *Ga. R.* and with *Candler vs. Hammond,* decided at Milledgeville, November, 1857.

It is true, that in *Powell vs. Howell,* decided at Macon, January, 1857, there are *dicta* not reconcilable with these two cases. But those *dicta* were not required by the *judgment,* which was as follows:

"Reversed, upon the ground, that there was no service of the *rule nisi* upon the opposite party."

McDonald, J., dissenting.

The cause was tried in the Court below at March Term 1857. A verdict was rendered for the defendant. During that Term of the Court, the counsel for the plaintiff made out a motion for a new trial, in writing, on fourteen grounds. The Court refused to pass upon it without argument. When the Court was requested to pronounce its judgment upon it, no brief of evidence had been made out and agreed upon by counsel or approved by the Court, there was no motion entered on the minutes and nothing on the docket. That it was reduced to writing by the counsel who had determined to move for a new trial, did not make it a proceeding of the Court. That the opposing counsel acknowledged service of it, and waived further notice, did constitute it a proceeding of the Court if it was not one without it. The acknowledgment of service saved the party the trouble of making a copy of the paper and serving it, but it did not impart to it a character or value which it did not possess.

The Clerk of the Court below, who was bound by law to send up a *complete transcript* of the *entire* record, sent up no motion for a new trial, not even the statement of such a case on the docket. There was, therefore, no motion in the Court. The judgment of the Court below complained of, was the refusal of the amendment of the *rule nisi.* If there was no *rule nisi,* there could have been no amendment. This motion was made at the Term of the Court next after the trial; but if there was no motion at the term, the motion to amend ought not to have been sustained. But it is assigned as a rea-

son, that the motion was not submitted in proper form, and the brief of evidence filed, that it was postponed to an adjourned term of the Court and that the leading counsel in the cause had leave of absence at that adjourned term. This leave of absence was nothing more than an assurance to the counsel to whom it was given, that their cases in Court should not be prejudiced by their absence. It was no license to them to postpone to a subsequent term of the Court, that which must have been done at that term or not at all. If a new trial could not have been moved for at a term of the Court, subsequent to that at which the trial was had, the motion to amend, considered as an original motion for a new trial ought not to have been allowed. This Court has very fully considered the law in such cases and at a very early day gave its exposition of it. In the case of *Graddy vs. Hightower e al.*, it decided that a *rule nisi* for a new trial will not be granted in this State, at the instance of a party, unless application is first made during the term at which the judgment was rendered, and unless the application appear on the minutes of that term. 1 *Kelly* 252. It also decided that the brief of the evidence must be agreed upon by the parties or their counsel or approved by the Court, and such agreement or approval must be entered on the minutes at the term of the Court at which the judgment is rendered, and the new trial is applied for. This case settled the law, and seems to me to have settled it very satisfactorily as to the time within which a new trial must be moved for, and when the brief of the evidence must be filed. We have no statute fixing the time for moving for new trials, but the act of February 1854, to regulate the granting of new trials, recognizes the existence of a legal period, within which motions for new trials may be entertained. *Pamph.* 47. The Legislature must have considered the adjudication above referred to as settling the law on that subject in this State.

In that case, at the term when the verdict was rendered, a *rule nisi* for a new trial was moved for orally by the coun-

sel of the defendant.  A brief of the testimony, as claimed by the counsel of the movant, was presented to the Judge.  The brief was objected to as imperfect by the counsel of the opposite party, and a protest against its completeness was formally made by them.  No *supersedeas* was entered and no brief of the testimony agreed upon by the parties or approved by the Court.  The minutes of the Court showed no action whatever touching the *rule nisi.*  No motion in relation thereto was entered on the minutes.  The presiding Judge took time to consider the application for the rule and took the papers with him, and some fifteen or eighteen months afterwards granted it in vacation.  The rule was made absolute and a new trial was granted.

This Court set that judgment granting a new trial aside, on the grounds already stated.

There was no motion for a new trial in that case, because the minutes of the Court at the term the verdict was rendered showed none.  The minutes of the Court show none in this case.  If there was no motion, there was nothing to amend,  As there was no *rule nisi*, the order to dismiss was supererogatory and useless.